IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

FUNDACION TELETON USA,

Plaintiff,

vs.

ALORICA, INC.,

Defendant.

**8:24CV117**

**ORDER**

This matter comes before the court on Plaintiff's Motions for Sanctions for alleged discovery misconduct. (Filing No. 137, Filing No. 185). Plaintiff Fundacion Teleton USA ("Teleton") seeks sanctions against Defendant Alorica, Inc. ("Alorica") under Federal Rules of Civil Procedure 26 and 37, as well as the court's inherent authority. Both motions are granted in part and denied in part for the following reasons.

## I. BACKGROUND

Teleton is a non-profit organization that raises funds for the Children's Rehabilitation Institute of TeletonUSA, generating more than half of its revenue during its annual telethon. (Filing No. 6). In 2013, Teleton entered into a Service Agreement ("the Agreement") with West Direct, LLC ("West Direct") for interactive voice response ("IVR") telephone services to support the telethon, including routing donor calls to an 800-number. (Filing No. 6, at paras. 12-13). The parties later executed an IVR Service Schedule ("the Schedule"), extending the relationship indefinitely. The Schedule required the IVR system to maintain at least 99.5% availability during the telethon and imposed penalties for unanswered or dropped calls in the

event of gross negligence or willful misconduct. The Agreement also disclaimed any warranty of uninterrupted service and capped West Direct's total liability. (Filing No. 6, at para. 13; Filing No. 42, at p. 17). In October 2015, Alorica acquired West Direct and assumed its obligations under the Agreement and Schedule. Teleton used the IVR services from 2013 through 2018 without incident. (Filing No. 6, at paras. 14-15; Filing No. 139-12, at p. 10).

For the 2019 telethon, Teleton advised Alorica to prepare for approximately 130,000 calls and projected roughly $3 million in donations, which Alorica represented it could handle. (Filing No. 6, at para. 17; Filing No. 139-12, at RFA Nos. 41, 58-59). Shortly after midnight on March 23, 2019, Teleton noticed it was not receiving donations through the IVR system. Although Alorica's technical staff exchanged multiple emails with Teleton throughout the night and assured that service would be restored, the IVR system failed to function from 2:30 a.m. until the telethon ended. Alorica ultimately handled 7,074 calls, generating $271,646. (Filing No. 6, at paras. 18-19, 23; Filing No. 139-12, at RFA No. 16). Within 48 hours of the telethon, Alorica created two Root Cause Analysis Reports ("RCARs"), identifying the failure of a Storage Area Network ("SAN") device housed at Alorica's Omaha Data Center as the cause of the outage. (Filing No. 169-1).

On December 6, 2019, nine months after the outage, Alorica issued a litigation hold directed at three client-relations employees: Brenda Nissen (Alorica's Director of Client Solutions), Jennifer Miller (client services manager), and Lonnie Barfield (Teleton account manager). (Filing No. 169-2). None of those employees had any role in the technical operation of the IVR system or the incident response effort during the 2019 telethon. (Filing No. 167-2, at 122:10-25). The hold required preservation of all communications with third parties and among Alorica employees related to the 2019 telethon. (Filing No. 169-2). It also requested preservation of the RCAR by document type and incident number. (Filing No. 169-2). The hold expressly prohibited the recipients from forwarding it to anyone. (Filing No. 169-2, at p. 3). It did not instruct anyone to preserve physical hardware and was not sent to any third party, including West Interactive, IBM, or Service Express, which were entities Alorica later

identified as having performed critical roles during the outage. (Filing No. 169-2; Filing No. 167-2, at 122:10-25).

Teleton filed suit on February 6, 2020, in the District Court of Bexar County, Texas, asserting claims for breach of contract, fraudulent inducement and misrepresentation, and negligent misrepresentation. (Filing No. 1; Filing No. 6). The case was removed to the United States District Court for the Western District of Texas on March 9, 2020, and later transferred to this court on April 1, 2024. (Filing No. 1; Filing No. 23). Three years after litigation began, Alorica decommissioned the Omaha Data Center, which housed the SAN device that caused the 2019 outage. Although the SAN device had been removed beforehand, Alorica could not identify its current location or identify any steps taken to preserve the device or its data. (Filing No. 167-2, at 77:11-14, 99:11-21, 313:14-315:7).

After removal, transfer to this court, and initial motion practice, the then-appointed Special Master issued a Final Progression Order on October 2, 2024, and discovery commenced. (Filing No. 62). Alorica initially responded to Teleton's written discovery with several boilerplate objections and asserted that IVR related documents were controlled by West Interactive, a separate entity. (Filing No. 139-1, at para. 4; Filing No. 139-2; Filing No. 139-3). Although Alorica acquired West Direct in 2015, it maintained that it never acquired West Interactive. (Filing No. 6, at paras. 14-15; Filing No. 42, at p. 17; Filing No. 57, at p. 3). Its discovery responses, however, frequently referred to both entities as "West" without distinguishing between them. (Filing No. 139-2, at RFPs 7, 12; Filing No. 139-3, at ROGs 1, 2; Filing No. 155-6, at ROGs 8, 14, 18, 19, 20).

These deficiencies prompted three discovery dispute conferences with the court. At the June 12, 2025 conference, the court ordered Alorica to revise its responses, remove boilerplate objections, confirm its due diligence for those searches, and supplement its production. (Filing No. 90). Alorica withdrew its general objections but represented doing so produced no substantive changes to its answers. (Filing No. 155-1, at para. 15). The court also authorized Teleton to serve additional discovery regarding Alorica's corporate structure and its relationship with West Division, LLC, West Interactive, and related entities. (Filing No. 90).

At the second conference on July 18, 2025, the court directed the parties to confer on a joint ESI protocol for additional searches and to further address the business relationship between Alorica and West Interactive. (Filing No. 107). In a subsequent joint status report, Alorica maintained that responsive IVR documents were not within its possession or control, but it would write to West Interactive requesting the information. (Filing No. 110). Yet it was later disclosed that Alorica's in-house counsel had already contacted West Interactive months earlier (in March 2025), obtained a limited production from West Interactive in April 2025, and produced those documents to Teleton on May 15, 2025, without disclosing that they originated from West Interactive. (Filing No. 141-3; Filing No. 139-1, at paras. 20, 49-50). Indeed, West Interactive responded to a Rule 45 subpoena months later, in December 2025, and produced largely the same materials. (Filing No. 139-1, at paras. 46-48, 52; Filing No. 141-3).

At the third conference on August 14, 2025, the court confirmed that the ESI protocol imposed non-reciprocal obligations on Alorica and ordered it to disclose the details of its prior searches. (Filing No. 117). For the first time, Alorica's counsel represented on the record that he needed to confirm what searches had been conducted, what search terms had been used, and what date ranges were applied. (Filing No. 118, Audiofile at 40:30-50:30). That representation came despite Alorica's prior certifications to the court that all responsive documents had been produced and nothing was being withheld. Counsel then sought leave to verify that those certifications were accurate before the parties could assess what potential searches remained and narrow the ESI protocol accordingly.

After finalizing the ESI Protocol, Alorica disclosed that its prior searches had been limited to three terms ("Teleton," "Fundacion," and "critusa.org"), across four custodians for the period January 1, 2017, through May 31, 2019. (Filing No. 155-9, at p. 1). Additional and broader searches under the ESI protocol yielded over six thousand pages of additional documents in September 2025, including internal real-time communications during the 2019 telethon, internal instant messages, and materials identifying previously undisclosed custodians. (Filing No. 139-1, at para. 42; Filing No. 141-2). That production also included

the RCARs, which Alorica had possessed since at least March 2019. (Filing No. 169-1). Alorica nonetheless never clearly disclosed in its interrogatory responses that the SAN caused the outage. In response to Interrogatory No. 11, Alorica attributed the outage to "server disruptions and/or disruptions to the storage area network (SAN) beyond the control of Alorica," framing the issue as a general IVR failure rather than identifying the SAN as the sole or primary cause. (Filing No. 155-2, at ROG 11). When Alorica subsequently advanced a definitive SAN-based causation theory in July 2025, it did not supplement its interrogatory responses to reflect that theory.

Teleton argues that the discovery deficiencies continued in the depositions. On January 29, 2026, Teleton served a notice of Rule 30(b)(6) deposition identifying 32 topics covering, among other things, the design and operation of the IVR system and SAN, testing and capacity protocols, Alorica's post-telethon remediation efforts, and its preservation and search efforts. (Filing No. 148). Alorica designated Nissen as its Rule 30(b)(6) witness on 28 of the 32 topics and Roger Minnick (IT supervisor), on the remaining topics. Alorica did not object to any of the noticed topics or seek a protective order.

Four days before Nissen's scheduled deposition, Alorica reassigned several technical topics from Minnick to Nissen, including Topic 5 concerning the SAN device. (Filing No. 187-1, Ex. A). During Minnick's February 10, 2026 deposition, Alorica's counsel confirmed on the record that Nissen would be addressing any SAN-related questions that Minnick could not answer. (Filing No. 187-3). Minnick testified during his deposition that that no one instructed him to preserve telethon-related data until sometime in 2025, and that it was Nissen who directed him to do so and not counsel. (Filing No. 167-3, at 20:10-21).

On February 13, 2026, Nissen testified as Alorica's Rule 30(b)(6) witness. At the outset, Nissen acknowledged that when she stated, "I don't know," she was representing that Alorica as a corporation did not know the answer. (Filing No. 187-2, at 7:18-25). Alorica's counsel also represented they spent 21 hours preparing her to testify. (Filing No. 181, at p. 5). Even so, Nissen responded that she did not know, could not recall, or was not prepared to

respond roughly 200 times. Ultimately, she could not provide substantive testimony on at least eleven topics for which she was designated.[1]

Nissen also revealed for the first time the identity of four members of Alorica's IT incident response team, including Leo Vergara (incident technical lead), Ed Williams (service line director), Melissa Paclibar (incident manager), and Julie Bliss (impacted site representative). (Filing No. 167-2, at 131:12-134:19). None of those individuals had been identified in discovery and none received the litigation hold. (Filing No. 167-2, at 83:18-84:5, Filing No. 169-2). Nissen also confirmed that group email accounts and listservs had not been preserved and that certain custodians' data had not been preserved because they departed before the hold issued. (Filing No. 138, at p. 21; Filing No. 139-1, at para. 39). Teleton contends that significant categories of documents remain missing, including system architecture materials, maintenance records, training documents, marketing materials, and communications with third parties. (Filing No. 138, at p. 2; Filing No. 139-1, at para. 45).[2]

Teleton filed its first Motion for Sanctions on January 2, 2026, seeking costs and fees related to its discovery efforts, authorization to present evidence of Alorica's discovery conduct at trial, and an adverse inference instruction. (Filing No. 137). On April 9, 2026, Teleton filed a second Motion for Sanctions based on Alorica's failure to produce an adequately prepared Rule 30(b)(6) witness, seeking exclusion of testimony and evidence on

[1] These include the SAN's technical specifications, maintenance records, and current location (Topic 5); Alorica's policies and procedures for technology failures or interruptions (Topic 6); training related to the IVR system's operation and maintenance (Topic 8); representations regarding the IVR system's capabilities (Topic 11); Alorica's efforts to bill Teleton for the 2019 telethon (Topic 14); the factual basis for Alorica's affirmative defenses (Topic 21); Alorica's preservation efforts and any deletion or non-preservation of relevant information (Topics 26 and 29); Alorica's search efforts and its inability to locate responsive documents (Topics 28 and 30); and the decommissioning of the Omaha data center (Topic 32). (Filing No. 148; Filing No. 166, at p. 15).

[2] Teleton submitted additional evidence with its reply brief bearing on the scope and cause of the missing documents, including excerpts from both depositions, the Root Cause Analysis Report, and the December 6, 2019 litigation hold. Alorica moved to strike that evidence on the ground that NECivR 7.1(c) does not permit a party to submit additional evidence with a reply brief without leave of court. (Filing No. 171). The court denied the motion to strike in part, deemed the reply evidence filed, and granted Alorica leave to file a surreply with additional evidence. (Filing No. 177). Alorica filed its surreply and supporting index of evidence on April 2, 2026. (Filing No. 181, Filing No. 182). The court has considered both the reply evidence and Alorica's surreply in ruling on this motion.

the eleven unprepared topics and an award of fees and costs. (Filing No. 185). Alorica opposes both motions. (Filing No. 154, Filing No. 181, Filing No. 202).

## II. LEGAL STANDARDS AND ANALYSIS

Teleton seeks sanctions under Federal Rules of Civil Procedure 26(g), 37(c), 37(d), and 37(e), as well as the court's inherent authority. Each request will be addressed in turn.

### A. Rule 26(g) – Reasonable Inquiry

Rule 26(g) imposes an affirmative duty on attorneys and parties to conduct discovery responsibly and to certify that each response is consistent with the Federal Rules, not interposed for an improper purpose, and neither unreasonable nor unduly burdensome. Fed. R. Civ. P. 26(g)(1)(B). That rule requires that counsel make a reasonable effort to ensure the client provided all responsive information available, assessed against the totality of the circumstances. *See* *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp*., 198 F.R.D. 508, 516 (N.D. Iowa 2000) (*quoting* Fed. R. Civ. P. 26(g), advisory committee notes to 1983 amendment). Courts consistently disfavor unsupervised self-collection by clients, particularly where key custodians hold documents central to the dispute. *See* *Thomas v. Marshall Pub. Sch*., 690 F. Supp. 3d 941, 963 (D. Minn. 2023) (ordering forensic examination of defendants' devices after finding self-collected ESI production was inadequate); *Bd. of Regents of Univ. of Nebraska v. BASF Corp*., 2007 WL 3342423, at *5 (D. Neb. Nov. 5, 2007) (imposing sanctions where counsel failed to issue a litigation hold or provide specific directives regarding ESI, resulting in the belated production of thousands of pages of responsive documents covered by a court order). When a certification violates Rule 26(g) without substantial justification, sanctions are mandatory. Fed. R. Civ. P. 26(g)(3).

Here, the record demonstrates that Alorica did not conduct a reasonable inquiry before certifying its discovery responses. To begin, it first responded to Plaintiff's discovery with boilerplate objections and did not disclose whether it was withholding responsive documents. (Filing No. 139-2; Filing No. 139-3). The Federal Rules do not permit that approach, as such objections prevent the requesting party from assessing whether responses are complete. *See*

*Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 186-87 (N.D. Iowa 2017). After Teleton raised those deficiencies, the court ordered Alorica to withdraw its boilerplate objections and confirm the adequacy of its searches. (Filing No. 90). Only then did the scope of the problem become apparent.

Alorica's original search used three keyword terms ("Teleton," "Fundacion," and "critusa.org"), which were then applied to only four custodians who were not on the response team addressing the outage. (Filing No. 155-9, at p. 1; Filing No. 167-2, at 122:10-25). Alorica then supplemented those searches with limited manual efforts directed at invoices, contract files, marketing materials, and specific incident ticket numbers. (Filing No. 155-9, at p. 1). Alorica’s employees conducted the manual searches largely on their own, consulting the company’s general counsel at most to locate specific document categories. (Filing No. 155-9, at p. 1). That was not sufficient under the circumstances presented here.

Rule 26(g) requires counsel to make a reasonable effort to ensure the client has provided all responsive information available, assessed against the totality of the circumstances. *See St. Paul Reinsurance,* 198 F.R.D. at 516 (*quoting* Fed. R. Civ. P. 26(g), advisory committee notes to the 1983 amendment). Relevant circumstances include the number and complexity of the issues, the nature and number of potentially relevant witnesses or documents, and the time available to conduct an investigation. *Id.* at 516, at n.3. This case involves an alleged system failure with multiple technical custodians, real-time communications, and third-party vendors, all of which were implicated by Teleton’s discovery requests. In that context, delegating document identification to employees under the direction of general counsel, without litigation counsel actively overseeing the search, did not constitute the reasonable inquiry required by Rule 26(g). *See Bd. Of Regents, 2007 WL 3342423,* at *5; *see also Optronic Tech, Inc. v. Ningbo Sunny Elec. Co., Ltd.,* 2020 WL 2838806, at *5 (N.D. Cal. June 1, 2020) (It is not enough for counsel to provide guidance about how to search for responsive documents and then not inquire further about whether that guidance was followed).

The results confirm that the methodology was not reasonable. Alorica's search excluded obvious custodians, including Regina Shanahan, who worked directly on the Teleton account during the 2019 telethon and whom Teleton identified only through third-party discovery. (Filing No. 139-1, at para. 51; Filing No. 141-3, at p. 3). Broader searches later performed under the ESI Protocol yielded more than 6,000 additional responsive documents, including real-time outage communications, internal instant messages, post-event recovery materials, and the RCARs. (Filing No. 139-1, at para. 42; Filing No. 141-2; Filing No. 169-1). All of those documents existed when Alorica certified its responses, and a reasonable inquiry would have uncovered them.

The inadequacy of Alorica's searches was compounded by the inaccuracy of its certifications. Alorica certified those deficient search results and represented to Teleton and to the court throughout discovery that it had conducted a diligent search and that no additional responsive documents existed. After the court ordered revised responses and required verification of its investigation efforts, Alorica served a "Confirmation of Due Diligence" on July 7, 2025, certifying that each response "stems from the Defendant's reasonable investigation." (Filing No. 155-6, at p. 7). But the record shows otherwise. For example, in response to Interrogatory No. 11, which asked Alorica to describe the cause of the outage, Alorica stated that it had "no additional information to provide." (Filing No. 155-6, at p. 7). Yet Alorica possessed the RCARs at that time and did not produce them until September 2025, after court intervention. (Filing No. 155-6, at p. 7; Filing No. 167-1, at para. 8; Filing No. 169-1). Alorica attributed the delay to a corrupted email file, but offered no corroborating evidence. (Filing No. 166, at p. 4; Filing No. 155-8, at p. 10). That explanation is also inconsistent with the litigation hold, which specifically identified the RCAR. (Filing No. 169-2). A reasonable Rule 26(g) inquiry would have, at a minimum, confirmed the document's existence and ensured its preservation and timely production.

These deficiencies became even more evident at the third discovery conference. For the first time, counsel acknowledged on the record that he did not know what searches his client had conducted. (Filing No. 118, 40:30-50:30). But counsel represented at the two prior

conferences that Alorica had produced all responsive documents and that no documents were withheld. (Filing No. 90, Filing No. 107, Filing No. 117). The court accepted those representations, but it now appears that they were not entirely accurate.

To avoid sanctions, Alorica must show that its certifications were substantially justified based on what was reasonable when it made them. *See St. Paul Reinsurance*, 198 F.R.D. at 516. Alorica offers three arguments, but none establishes substantial justification. First, Alorica argues that Teleton's proposed searches were disproportionate to the needs of the case given the contractual limitation of liability. (Filing No. 119-1; Filing No. 154, at pp. 14-15). That argument misses the point. Rule 26(b)(1) governs the permissible scope of discovery and Rule 26(g) required counsel to conduct a reasonable inquiry before certifying the completeness of its discovery responses. The question is therefore whether Alorica's searches were objectively reasonable when counsel signed the certifications, not whether Alorica can now identify cost concerns that might have supported narrower searches. Alorica did not raise contemporaneous proportionality objections. It also did not seek a protective order, disclose that it limited its searches for cost reasons, or otherwise preserve an objection to the adequacy of its efforts before certifying its responses. (Filing No. 125). Instead, Alorica invoked proportionality only after Teleton challenged the sufficiency of its search process. (Filing No. 119-1). The ESI negotiations further confirm this. Alorica estimated that exporting and searching custodial data would cost between $100,000 and $200,000, excluding review costs, and argued the discovery was disproportionate considering the contractual limitation of liability. (Filing No. 155-10; Filing No. 119-1). Alorica nevertheless signed the ESI Protocol, agreed to search those custodians, and obtained no cost-shifting or cost-limiting provision. (Filing No. 125; Filing No. 155-11, at cmt. JW2).

Second, Alorica argues that it offered to stipulate that the SAN caused the IVR disruption, allegedly eliminating the need for the disputed searches. (Filing No. 154 at 11; Filing No. 167-1, at para. 5). But the record does not support that assertion either. The parties' correspondence contains no reference to such an offer, Alorica produced no documentation memorializing it, and Teleton's counsel denies that any offer occurred. (Filing No. 155-9).

The court therefore declines to credit an undocumented stipulation offer as justification for certification failures. Even if Alorica had proposed such a stipulation, it could not retroactively satisfy Alorica's independent certification obligations under Rule 26(g).

Third, Alorica argues that its searches were reasonable and that its general counsel adequately supervised the collection process. The record again shows otherwise. Alorica used only three search terms across four custodians, delegated document identification to internal employees without meaningful oversight from litigation counsel, and employed a methodology so narrow that it failed to capture responsive materials. Alorica's later production of more than 6,000 additional responsive documents after execution of the ESI Protocol further again confirms the inadequacy of the original search. On this record, Alorica has not carried its burden to show substantial justification for its deficient certifications and Rule 26(g)(3) therefore requires the court to impose an appropriate sanction.

**B. Rule 37(c) – Failure to Supplement**

The record shows that Alorica also failed to comply with its duty to timely supplement its disclosures and discovery responses. Rule 26(e) requires a party to supplement or correct its discovery responses in a timely manner if the party learns that, in some material respect, a prior response is incomplete or incorrect. Fed. R. Civ. P. 26(e)(1)(A). If a party fails to do so, Rule 37(c)(1) authorizes sanctions, including exclusion of evidence and payment of reasonable expenses and attorney's fees. Fed. R. Civ. P. 37(c)(1). A failure to supplement timely is equivalent to a failure to disclose. *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998). Sanctions are unavailable only if the failing party demonstrates the failure was substantially justified or harmless and the burden rests on the party opposing sanctions. *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 705 (8th Cir. 2018). Alorica has not made that showing.

First, it appears Alorica possessed the RCARs throughout discovery and knew the SAN was the cause of the outage. But its interrogatory responses did not clearly say that. When Alorica later advanced a definitive SAN-based causation theory, it did not supplement its

written responses to reflect that theory. Even after court-ordered revisions, the supplemental responses omitted substantive information about the SAN, misidentified technical participants, and described the event inconsistently with contemporaneous documents. (Filing No. 155-6, at pp. 7-9, Filing No. 169-1). Second, Alorica's IT incident response team played a central role in responding to the 2019 outage, yet none were identified in discovery. (Filing No. 167-2, at 131:12-134:19). Alorica was obligated to disclose those individuals as their relevance became apparent. Third, the record also reflects deficiencies in Alorica's disclosures concerning its relationship with West Interactive. After producing documents obtained from that entity, Alorica did not timely disclose the source of those documents or clarify the nature of its relationship with that entity, requiring Teleton to pursue third-party discovery. (Filing No. 141-3; Filing No. 139-1, at para. 51). Despite repeated requests, the relationship was not clearly explained and remains unclear in the record.

Alorica argues that its failures were substantially justified or harmless. The court is not persuaded. Rule 37(c)(1) focuses on whether the failure impaired the opposing party's ability to prepare and present its case. The record here reflects that Alorica repeatedly represented that its productions were complete, while later disclosures revealed substantial additional materials. This forced Teleton to revisit its discovery and expert strategy after written discovery closed and pursue unnecessary third-party discovery from West Interactive. Together, these failures altered some trajectory of the litigation and likely increased costs. Alorica has not carried its burden under Rule 37(c)(1), and some sanction is therefore warranted.

### C. Rule 37(e) – Failure to Preserve Electronically Stored Information

The preservation failures already noted also warrant sanctions under Fed. R. Civ. P. 37(e). That rule authorizes sanctions when electronically stored information that should have been preserved in anticipation or conduct of litigation is lost because a party failed to take reasonable preservation steps and the information cannot be restored or replaced through additional discovery. Fed. R. Civ. P. 37(e). If the loss prejudices another party, the court may impose measures no greater than necessary to cure the prejudice. Fed. R. Civ. P. 37(e)(1).

More severe sanctions require proof that the party acted with intent to deprive another party of the information's use in the litigation. Fed. R. Civ. P. 37(e)(2). A party's duty to preserve arises when litigation is reasonably foreseeable, not merely when suit has been filed. *See Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746, 749 (8th Cir. 2004). The duty extends to key custodians and evidence reasonably likely to bear on the dispute. *See In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 517–18 (S.D. W. Va. 2014).

Alorica's duty to preserve in this matter arose no later than the night of the telethon outage, when its personnel exchanged emails concerning the incident and of potential contractual consequences. (Filing No. 169-1; Filing No. 167-2, at 122:10-25). By June 2019, Teleton sent letters directly attributing the outage to Alorica. (Filing No. 139-1, at para. 4). At the latest, the duty attached by December 6, 2019, when Alorica issued its litigation hold. But that litigation hold was provided only to three client-relations employees. Alorica apparently excluded members of the IT incident response team and third-party vendors involved in the outage and prohibited recipients from forwarding the hold to other employees. (Filing No. 169-2). Although the hold identified relevant categories of evidence, including the RCARs, it appears Alorica never sent the hold to the custodians most likely to possess those materials or implement measures to ensure their preservation. (Filing No. 166, at pp. 9-10; Filing No. 169-2). As described above, Minnick testified that no one told him to preserve telethon-related materials until 2025, and that request came from Nissen rather than litigation counsel. (Filing No. 167-3, at 20:10-21). Group email accounts and listservs were not preserved and it appears certain custodians' data was lost because they left the company before the hold issued. (Filing No. 139-1, at para. 39). Although some materials were later recovered through the ESI Protocol process, other relevant evidence was not. (Filing No. 139-1, at para. 42).

The most significant preservation failure likely concerns the SAN device itself. Alorica's own RCARs identified the SAN as the direct cause of the outage. Its condition, maintenance history, and configuration would likely bear directly on central issues in this case, including foreseeability, reasonable care, and the accuracy of Alorica's account of the

outage. Yet Alorica decommissioned the Omaha Data Center in 2023, removed the SAN, and now has no record of the device's location or any preservation measures taken before its removal. (Filing No. 167-2, at 77:11–14, 313:14–315:7). Alorica also produced no maintenance records, policies, procedures, or manuals relating to the SAN. (Filing No. 167-1, at para. 4). As a result, Teleton cannot independently verify the cause or scope of the outage, assess the condition of the hardware Alorica used, or evaluate competing explanations for the failure. These preservation failures therefore prejudiced Teleton and Rule 37(e)(1) authorizes curative sanctions.

Notwithstanding these issues, the evidence on this record is insufficient to establish an intent to deprive under Rule 37(e)(2). The deficiencies described certainly raise substantial concerns and reflect inadequate litigation management, deficient preservation practices, and insufficient attorney supervision. But the record does not show that Alorica decommissioned the Omaha Data Center or failed to preserve the SAN to eliminate evidence or evade discovery obligations. Instead, the Omaha Data Center was scheduled for 2020 closure as reflected in the RCAR, and Nissen testified that the SAN had already been removed by the time the data center was eventually decommissioned in 2023. (Filing No. 169-1; Filing No. 167-2, at 77:11-14). The decommissioning reflects a documented business decision, which undermines any inference Alorica acted with the purpose of depriving Teleton of that evidence. The failure to implement adequate safeguards in connection with that process speaks to negligence, not intent. But negligence alone does not satisfy Rule 37(e)(2)'s intent requirement. *See Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018). On this record, the court cannot infer intent to deprive, making the more severe sanctions authorized under Rule 37(e)(2) unwarranted.

**D. Rule 37(d) – Failure to Produce Adequately Prepared Rule 30(b)(6) Witness**

In its second motion for sanctions (Filing No. 185), Teleton argues that Alorica's Rule 30(b)(6) witnesses were inadequately prepared. Rule 30(b)(6) requires an organization to designate and prepare witnesses to provide complete, knowledgeable, and binding answers on noticed topics. Fed. R. Civ. P. 30(b)(6). The obligation extends beyond an individual's personal knowledge. If no employee possesses adequate knowledge, the corporation must

prepare a witness who does. *See Commodity Futures Trading Comm'n v. Svejda*, No. 8:21CV311, 2023 WL 7300620, at *8 (D. Neb. Nov. 6, 2023). When a corporation fails to do so, the appearance is, for all practical purposes, no appearance at all. *See Wood v. PACCAR, Inc.*, No. 19-CV-1010-LRR, 2020 WL 831142, at *9 (N.D. Iowa Feb. 19, 2020) (internal citation omitted). Rule 37(d) authorizes sanctions when a corporation fails to produce an adequately prepared witness, including exclusion of evidence, an award of reasonable expenses and attorneys' fees, or other sanctions. Fed. R. Civ. P. 37(d). Where exclusion is warranted, the authority for that remedy derives from Rule 37(b)(2), which permits the court to prohibit a party from introducing designated matters into evidence. Fed. R. Civ. P. 37(b)(2); *Cedar Hill Hardware & Constr. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 345 (8th Cir. 2009). The court finds that Alorica violated Rule 37(d) and that some sanctions are warranted.

The court first concludes that Alorica did not satisfy its Rule 30(b)(6) obligations.[3] Teleton served its initial deposition notice in June 2025, with substantially identical topics as the final notice served January 29, 2026. (Filing No. 95; Filing No. 148). Alorica did not object to any of the thirty-two noticed topics or seek a protective order. Four days before Nissen's scheduled deposition, the record shows that Alorica reassigned several technical topics from Minnick to Nissen. (Filing No. 187-1, at Exhibit A). During Minnick's deposition, Alorica's counsel confirmed on the record that any SAN-related questions Minnick could not answer would be addressed by Nissen. (Filing No. 187-3, at 67:1-69:22). But they were not.

Nissen was unable to provide substantive testimony on eleven of the twenty-eight topics for which she was designated. At the outset, Nissen acknowledged that when she said "I don't know," she was speaking on behalf of the corporation. (Filing No. 187-2, at 5:22-25). As to Topic 5 (regarding the SAN used during the 2019 telethon), Nissen could not identify

---

[3] Alorica argues that Teleton's motion is procedurally deficient for failure to comply with Rule 37(d)(1)(B)'s meet-and-confer requirement. Rule 37(d)(1)(B)'s certification requirement applies only to motions for sanctions based on a failure to answer or respond to interrogatories or document requests. By its terms, it does not extend to a party's failure to appear for a deposition. Fed. R. Civ. P. 37(d)(1)(B); *see also Patton v. Sparks*, 2024 WL 181826, at *6 (D. Kan. Jan. 17, 2024).

the SAN's technical specifications. (Filing No. 187-2, at 36:17-37:6). She also could not identify the SAN's maintenance records (Filing No. 187-2, at 36:1-16, 37:19-40:14), software updates or testing protocols (Filing No. 187-2, at 53:1-55:13), or current location. (Filing No. 187-2, at 77:1-78:2). She acknowledged she had never worked with the SAN, had no IT background, and had never seen maintenance records for it. (Filing No. 187-2, at 36:1-40:14; 122:23-25). On Topic 6 (regarding policies and procedures governing technology failures), Nissen could not identify whether Alorica had a written disaster recovery plan and could not describe any failover or redundancy policy for the SAN. (Filing No. 187-2, at 20-21:1-12, 61:1-64:13).

On Topics 26 and 29 (regarding Alorica's preservation efforts and any deletion or non-preservation of relevant information after the outage), Nissen could not describe the steps taken to disable automatic deletion functions. She also could not confirm whether the incident response team received litigation holds. (Filing No. 187-2, at 254:1-261:20). On Topics 28 and 30 (regarding Alorica's search efforts and its inability to locate responsive information), she could not identify who was searched in each collection round. She also could not explain how the searches differed. (Filing No. 187-2, at 254:1-261:20). On Topic 21 (regarding the factual basis for Alorica's affirmative defenses), Nissen stated on the record that she was not prepared to answer for the majority of those defenses, including four defenses that were withdrawn by Alorica's counsel during the deposition. (Filing No. 187-2, at 8:1-17:25). In short, she was unable to answer many questions that Alorica's counsel represented she would address.

Alorica argues that Nissen was adequately prepared because counsel spent more than twenty-one hours with her. (Filing No. 181, at p. 2; Filing No. 202, at p. 6). But the obligation under Rule 30(b)(6) is to produce a witness who can answer, not spend time preparing one who cannot. *See Svejda*, 2023 WL 7300620, at *8. Alorica also argues that Teleton's counsel contributed to Nissen's deficiencies by refusing to show her documents that might have refreshed her recollection. (Filing No. 202, at pp. 7-8). The court notes that counsel on both sides bears a professional obligation to conduct depositions in good faith. That said, the

burden to prepare the corporate witness belonged to Alorica, not opposing counsel. *Id.* The record does not support the suggestion that Teleton engineered Nissen's failures. During one exchange, Alorica's counsel objected to the form and manner of the examination, characterizing it as menacing and harassing, and Teleton's counsel disputed that characterization on the record. (Filing No. 187-2, at 161:11-164:4). But Alorica identified no question that exceeded the scope of any noticed topic and raised no objection on that basis. Having elected not to challenge the noticed topics or seek a protective order, Alorica was required to produce a knowledgeable, prepared witness on those topics. *See Wood*, 2020 WL 831142, at *9.

### E. Inherent Authority

Even where a party's conduct does not fall neatly within a specific sanctions rule, the court retains inherent authority to impose sanctions to manage its proceedings and deter abuse of the judicial process. *Chambers v. NASCO Inc.*, 501 U.S. 32, 44–45 (1991). That authority, however, must be exercised with restraint. Where the Federal Rules adequately address the conduct at issue, courts generally rely on those rules rather than inherent authority. *Id*. at 50. When invoked, inherent authority requires a finding of bad faith, not mere negligence. *Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1006 (8th Cir. 2012). The record does not support such a finding here. Although the discovery failures described above reflect substantial deficiencies in litigation management and oversight, they are more consistent with institutional neglect than with deliberate suppression of evidence or bad faith conduct. *Id*. at 1006-07. Because the Federal Rules of Civil Procedure adequately address the misconduct at issue and provide a sufficient basis for tailored sanctions, the court declines to invoke its inherent authority to impose additional sanctions.

## III. APPROPRIATE SANCTIONS

The violations identified above are not independent failures to be assessed in isolation. At every stage where discovery offered Teleton a means of testing Alorica's account of the 2019 outage, those means was compromised by Alorica's own conduct. The case turns on

three questions, and all three depend on the same evidence. The first is whether Alorica used commercially reasonable best efforts to meet its service obligations, the standard governing the breach of contract claim, and whether any failure rose to the gross negligence or willful misconduct that would remove the contractual liability cap. The second is whether Alorica misrepresented its IVR system's capacity and reliability before the telethon, including its representation that a backup system was in place. The third is whether any such misrepresentation was made with the knowledge required to support the damages Teleton seeks. The answers to many of these questions arguably depends on the SAN's maintenance history and technical condition, the existence and operation of any backup or failover system, and the internal communications and personnel who knew about that condition before and during the outage.

Each violation narrowed Teleton's access to that evidence at a different stage of the case. The Rule 26(g) search failure meant the individuals most likely to have such evidence, including the IT incident response team, were never searched in the first place. The Rule 37(c) supplementation failure meant Alorica withheld its own internal conclusion that the SAN caused the outage for months after reaching that conclusion, preventing Teleton from focusing its discovery efforts accordingly. The Rule 37(e) preservation failure means that the SAN itself, the most direct physical evidence of its condition, can no longer be examined by either party. And the Rule 37(d) deposition failure meant that even the last available mechanism for obtaining this information, a corporate deposition specifically noticed to cover the SAN's specifications and maintenance, produced no answers.

Viewed individually, each failure might be remediable through targeted measures. Viewed together, they reflect a sustained inability or unwillingness on Alorica's part to make available the evidence most central to the disputed cause of the outage and the truth of its pre-telethon representations, as well as Alorica's knowledge at the time those representations were made. That pattern, rather than any single violation standing alone, establishes prejudice to Teleton's ability to prove its claims and shapes the scope of the sanctions set forth below. The court accordingly finds that Alorica violated Rules 26(g), 37(c), 37(d) and 37(e)(1), and that

some sanctions are warranted for those violations. The court has broad discretion to impose sanctions, but the measures it imposes may not exceed what is necessary to cure any prejudice. Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment.

**A. Attorneys' Fees and Costs**

Monetary relief in the form of attorneys' fees and costs is appropriate because Teleton incurred additional expense and effort directly caused by Alorica's discovery failures. The court accordingly awards reasonable attorneys' fees and costs in five categories, each corresponding to identifiable prejudice to which Alorica's conduct directly contributed.

First, Teleton may recover fees and costs associated with the three discovery conferences, including pre-conference submissions and meet-and-confer efforts. Those proceedings were necessitated by Alorica's deficient searches and repeated representations that production was complete. (Filing Nos. 90, 107, 117). Second, Teleton may recover fees and costs incurred in negotiating and implementing the ESI Protocol between the July 18, 2025 order and its finalization on September 5, 2025. (Filing No. 107, Filing No. 125). Third, Teleton may recover fees and costs associated with the Rule 45 subpoena to West Interactive, including issuance, service, review of production, and related motion practice. These costs also include efforts required to address Alorica's failure to timely and clearly disclose the nature of its relationship with West Interactive, which necessitated third-party discovery that should have been avoided. (Filing No. 139-1, at para. 46; Filing No. 141-3; Filing No. 138, at p. 25). Fourth, Teleton may recover fees and costs incurred in preparing for and conducting Nissen's Rule 30(b)(6) deposition. Finally, Teleton may recover fees and costs incurred in preparing and filing both Motions for Sanctions, which were made necessary by the conduct described above.

The court declines to award fees for the entirety of Teleton's written discovery efforts. Not every expense is traceable to Alorica's sanctionable conduct, and fees beyond the categories identified above are not warranted. Alorica's argument that the contractual limitation of liability bars any fee award is rejected for the reasons previously stated. As the

court explained, that cap may govern Teleton's substantive claims, but it has no bearing on fees incurred because of Alorica's discovery conduct.

### B. Trial-Related Relief

Monetary sanctions alone do not fully address the prejudice established in this record. Fees do not restore evidence gaps or account for the effect of delayed or incomplete disclosures on the presentation of Teleton's case. *See Clayton International, Inc. v. Nebraska Armes Aviation, LLC*, 2025 WL 1827667, at *4 (D. Neb. July 2, 2025). The court therefore recommends that Senior U.S. District Judge Joseph F. Bataillon permit Teleton to present evidence and argument to the jury regarding Alorica's preservation failures and the circumstances surrounding the late production of the RCARs.[4] The court further recommends that Judge Bataillon allow a permissive jury instruction advising the jury that it may consider the absence of certain evidence and the circumstances of its loss in evaluating the parties' competing accounts of the 2019 telethon outage. This approach ensures the jury understands why the record may be incomplete while preserving its role in deciding what weight to assign that fact. *Id*. The court, however, rejects Teleton's additional request for an adverse inference instruction under Rule 37(e)(2), as the evidence does not support a finding of deliberate intent or bad faith. The court finds that targeted curative measures under Rule 37(e)(1) are sufficient to address the identified prejudice. A permissive jury instruction and evidentiary presentation adequately restores balance without substituting judicial fact-finding for the jury's role.

Teleton also requests exclusion of Alorica's testimony and evidence on all eleven unprepared topics. The court denies that relief. On the SAN-related topics (Topics 5, 6, 8, 11, and 32) and the discovery and preservation topics (Topics 26, 28, 29, and 30), the curative measures already ordered under Rule 37(e)(1) address the evidentiary gap. Any prejudice from Alorica's failure to prepare Nissen on these topics is the same general evidentiary gap

[4] This matter was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A), meaning an order is appropriate as opposed to formal findings of fact and recommendations under § 636(b)(1)(B). While the undersigned uses the word "recommend" herein, it does so only because he believes the final determination of what evidence may or may not be admitted at trial should be left to the assigned trial judge.

the jury instruction and trial presentation already account for-- the absence of information about the SAN's condition and Alorica's preservation efforts. An additional exclusion sanction would simply address the same gap a second time.

Topics 21 and 14 require closer look. On Topic 21, Nissen stated on the record, repeatedly and on behalf of Alorica, that she was not prepared to answer the factual basis for the majority of Alorica's affirmative defenses. (Filing No. 187-2, at 8:1-17:25). This court addressed a similar problem in *Blackmore v. Union Pacific Railroad Co*., 2022 WL 3718115, at *6-8 (D. Neb. Aug. 29, 2022), and again in *Atwood v. Union Pacific Railroad Co*., 2022 WL 17585893, at *8-10 (D. Neb. Dec. 12, 2022). The court in those cases found that a lay witness ordinarily cannot identify "all facts" supporting a defense without counsel first assembling and explaining the evidence, since the witness "will essentially be parroting the lawyer's trial strategy for presenting evidence in favor of that defense." *Atwood*, 2022 WL 17585893, at *9. A deposition topic of this kind "is so broad that it encompasses the organizational structure and contents of the lawyer's trial notebook," and answering it in full "would impermissibly disclose counsel's work product." *Id*. For that reason, both *Blackmore* and *Atwood* found a nearly identical deposition topic improper and granted a protective order striking it. *Blackmore*, 2022 WL 3718115, at *7-8; *Atwood*, 2022 WL 17585893, at *10.

Alorica never moved for a protective order on Topic 21, unlike the defendants in those cases, and it forfeited any objection to the topic on that basis. But the overbreadth concern still bears on the appropriate remedy. Nissen stated that she was not prepared to answer those questions. (Filing No. 187-2, at 8:1-17:25). The court will not assume why she did not answer, but does find that excluding evidence based on her non-answers risks penalizing Alorica for failing to do the very thing *Blackmore* and *Atwood* held a corporate witness should not be required to do: recite "the factual basis" for each affirmative defense as though answering a contention interrogatory. The court accordingly declines to exclude evidence or testimony on the affirmative defenses covered by Topic 21. The monetary sanctions and trial-related relief ordered above already address the prejudice the deposition failure caused. Teleton may use

Nissen's testimony in presenting its case and in cross-examining Alorica's witnesses at trial. That relief is adequate without the additional remedy of exclusion.

Topic 14 presents a different problem. Alorica's nonpayment defense, partially invoked by Nissen under Topic 21, depends on the premise that an invoice was sent to Teleton. Nissen testified that she had seen invoices and recalled a monthly billing pattern, but she could not confirm how any particular invoice was transmitted, whether by email, portal upload, or otherwise. (Filing No. 187-2, at 116:5-118:9). Unlike Topic 21, this is not an overbroad topic. Nissen's inability to confirm transmission is accordingly a binding corporate statement. *See Svejda*, 2023 WL 7300620, at *10.

The court is mindful that a Rule 30(b)(6) deposition is not meant to be "a trap[ ] in which the lack of an encyclopedic memory commits an organization to a disadvantageous position." *Brown v. West Corp.*, 2014 WL 1794870, at *1 (D. Neb. May 6, 2014). But Alorica did more than rely on an imperfect memory. It later submitted a post-deposition affidavit from Nissen, filed in support of its motion for summary judgment, stating definitively that the invoice was sent. (Filing No. 196-1, at para. 6). That affidavit seemingly conflicts with Nissen's deposition testimony, where she could not confirm transmission and did not recall seeing any document showing the invoice was sent. Whether that conflict warrants disregarding the affidavit under ordinary summary judgment principles is a question for Judge Bataillon to resolve. *See Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983) (affidavit directly contradicting prior deposition testimony without explanation does not create a genuine issue of fact). The monetary sanctions and trial-related relief ordered above, together with Teleton's ability to cross-examine Alorica's witnesses on this inconsistency at trial, adequately address any prejudice from Topic 14. The court will accordingly not order further exclusion.

The court also declines to order a renewed deposition. Alorica has not identified any employee better suited to testify, has not represented that additional documents exist to review, and has offered no basis to conclude a second deposition would yield a different result. *See Svejda*, 2023 WL 7300620, at *10. Nissen's post-deposition affidavit confirms that the

problem is not lack of preparation, but rather lack of information. A second deposition would do little to address the problems here.

## IV. CONCLUSION

For the reasons set forth above, IT IS ORDERED that Plaintiff's Motion for Sanctions (Filing No. 137, Filing No. 185) are each granted in part and denied in part. An award of reasonable attorneys' fees and costs is awarded to Teleton pursuant to Fed. R. Civ. P. 26 and 37, as specifically set forth herein.

i. On or before July 14, 2026, Teleton shall submit an itemized billing statement of its requested fees and costs, limited to the five categories identified above, to Alorica's counsel.

ii. Alorica shall respond to this itemization on or before July 28, 2026. The response must include specific objections to itemized tasks and the reasons supporting those objections.

   a. If Alorica does not timely respond, the fee request will be deemed undisputed and Teleton shall file with the court a notice of the fees and costs to be awarded on or before August 4, 2026.

   b. If the parties agree to the amount to be awarded, they shall file a joint stipulation for entry of an order awarding costs and fees to Teleton on or before August 4, 2026.

iii. If the parties do not agree on the attorneys' fees and costs to be awarded, or if Alorica timely objects to Teleton's statement of attorneys' fees and costs, Teleton shall file with the court a motion for assessment of attorneys' fees and costs no later than August 11, 2026. This motion shall be submitted in accordance with the court's fee application guidelines outlined in NECivR 54.3 and 54.4, but a supporting brief will not be required.

iv. If a motion for fees is required, the court may award Teleton up to an additional $1,000.00 to recover the cost of preparing its motion for assessment of fees.

Dated this 30th day of June, 2026.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge