IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

FUNDACION TELETON USA,

Plaintiff,

vs.

ALORICA, INC.,

Defendant.

**8:24CV117**

**ORDER**

This matter comes before the court on Plaintiff Fundacion Teleton USA's ("Teleton") Motion for Assessment of Attorney Fees and Costs to Be Awarded. (Filing No. 233). The undersigned previously granted Teleton's motions for sanctions against Defendant Alorica, Inc. ("Alorica") in part and awarded Teleton reasonable attorneys' fees and costs in five categories. (Filing No. 218) (hereinafter the "sanctions order"). The sanctions order directed Teleton to submit an itemized billing statement to Alorica. Alorica objected to a portion of the requested fees, which prompted this motion. For the following reasons, the motion is granted in part.

## I. BACKGROUND

Teleton is a non-profit organization that raises funds for the Children's Rehabilitation Institute of TeletonUSA through an annual telethon. This action arises from the failure of the interactive voice response ("IVR") system Alorica provided for Teleton's 2019 telethon. The facts underlying the fee award are set out in detail in the sanctions order and need not be repeated in full here. (Filing No. 218). In short, discovery did not proceed smoothly in this case. Over the course of the litigation, the parties required three discovery dispute conferences with the court, the negotiation of an ESI protocol, and a Rule 45 subpoena to third party West Interactive. Teleton then filed two motions for sanctions.

Teleton filed the first on January 2, 2026, challenging Alorica's deficient searches, failure to supplement, and failure to preserve evidence. (Filing No. 137). Teleton filed the second on April 9, 2026, asserting that Alorica failed to produce an adequately prepared Rule 30(b)(6) witness. (Filing No. 185).

On June 30, 2026, the undersigned granted both motions in part. (Filing No. 218). The court found that Alorica violated Federal Rules of Civil Procedure 26(g), 37(c), 37(d), and 37(e)(1) through a sustained pattern of discovery misconduct. The court declined to invoke its inherent authority, however, finding that Alorica's discovery failures were "more consistent with institutional neglect than with deliberate suppression of evidence or bad faith conduct." (Filing No. 218, at p. 17). The court also ordered certain trial-related relief and denied Teleton's remaining requests. (Filing No. 218, at pp. 20-23).

As to monetary relief, the court found that Alorica's discovery failures caused Teleton to incur additional effort and expense. (Filing No. 218, at p. 19). It accordingly awarded reasonable attorneys' fees and costs in five categories:

1. Preparing for and participating in the June 12, July 18, and August 14, 2025 discovery dispute conferences (Filing Nos. 90, 107, 117), including pre-conference submissions and meet-and-confer efforts;

2. Negotiating and implementing the ESI Protocol between the court's July 18, 2025 order and the Protocol's finalization on September 5, 2025 (Filing Nos. 107, 125);

3. Issuing and serving the Rule 45 subpoena to West Interactive, reviewing its production, and related motion practice, including the efforts required to address Defendant's failure to timely and clearly disclose the nature of its relationship with West Interactive (Filing No. 139-1, at para. 46; Filing No. 141-3; Filing No. 138, at p. 25);

4. Preparing for and conducting Brenda Nissen's February 13, 2026 Rule 30(b)(6) deposition; and,

5. Preparing and filing both Motions for Sanctions (Filing Nos. 137, 185).

(Filing No. 218, at p. 19). The court declined to award fees for the entirety of Teleton's written discovery efforts, explaining that "[n]ot every expense is traceable to Alorica's sanctionable conduct." (Filing No. 218, at p. 19).

Both parties objected to the sanctions order. (Filing No. 222; Filing No. 224). The presiding district court judge[1] overruled Alorica's objection. (Filing No. 232, at pp. 3-4). He specifically rejected Alorica's argument that the contractual damages cap limits the monetary sanctions, explaining that the cap governs damages under the contract, not sanctions authorized under the Federal Rules. (Filing No. 232, at pp. 3-4). On Teleton's objection, he amended the trial-related relief to clarify that the case will be tried to the bench and otherwise overruled the objection. (Filing No. 232, at pp. 4-5).

The sanctions order also established the procedure for resolving the amount of the award. The order directed Teleton to submit an itemized billing statement to Alorica's counsel by July 14, 2026, and directed Alorica to respond by July 28, 2026. (Filing No. 218, at p. 23). The order required Alorica's response to "include specific objections to itemized tasks and the reasons supporting those objections." (Filing No. 218, at p. 23). If Alorica did not timely respond, the court would deem the fee request undisputed. If the parties could not agree, Teleton could file a motion for assessment of fees and costs. The court noted that it may award Teleton up to an additional $1,000.00 for the cost of preparing that motion. (Filing No. 218, at p. 23).

On July 14, 2026, Teleton served an itemized fee statement seeking $176,200.00 in fees for 447.90 hours billed by five attorneys and one paralegal, at hourly rates ranging from $200.00 to $550.00. (Filing No. 233, at p. 4; Filing No. 235-1, at pp. 1-4, 37). Teleton also sought $2,326.20 in court reporter costs for the Rule 30(b)(6) deposition. (Filing No. 233, at p. 4). Under an extension agreed to by counsel, Alorica responded on July 31, 2026,

[1] The Honorable Joseph F. Bataillon, Senior United States District Court Judge

with an annotated copy of the fee statement with its disputes. (Filing No. 233, at p. 4).[2] Alorica challenged certain entries as unrelated to the sanctions order, duplicative, or excessive. (Filing No. 235-1, at pp. 41-95). According to Alorica's counsel, those objections amounted to $70,720.00 in fees. Teleton accordingly views the remaining $105,480.00 in its requested fees, along with the requested costs, as undisputed. (Filing No. 233, at p. 4).

Teleton then filed the instant motion. (Filing No. 233). Teleton argues that Alorica's response did not comply with the sanctions order and asks the court to overrule it in its entirety. On that basis, Teleton seeks the full $179,526.20 in fees and costs, including the $1,000.00 for preparing the motion. (Filing No. 233, at pp. 4-6). Alternatively, Teleton agrees to a ten percent reduction of the disputed fees ($70,720.00), which reduces the request by $7,072.00, conceding that it errantly included some entries and that others warrant further explanation or reduction. (Filing No. 233, at p. 5). Under that alternative, Teleton seeks a revised total of $172,454.20 in fees and costs. (Filing No. 233, at p. 6). Alorica maintains that the requested hourly rates exceed the prevailing market rate in this district and that the hours billed reflect over-lawyering. (Filing No. 241, at pp. 8-11). Alorica asks the court to exercise its discretion to determine a reasonable fee, but does not propose an alternative amount. (Filing No. 241, at p. 11).[3]

## II. LEGAL STANDARD

The determination of a reasonable attorneys' fee lies within the district court's broad discretion. *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). The most useful starting point is the lodestar, the number of hours reasonably expended multiplied by a reasonable hourly

---

[2] Although the sanctions order required Alorica to respond by July 28, 2026, counsel agreed to extend that deadline and Teleton does not contend that Alorica responded late. (Filing No. 233, at p. 4). The court therefore treats Alorica's response as timely.

[3] Alorica's brief also quotes the contractual limitation of liability, but it does not argue that the provision limits the fee award. (Filing No. 241, at pp. 1-2; *see also* Filing No. 243, at p. 3 n.1). To the extent Alorica intends to renew that argument, the court rejected it in the sanctions order and will not review it again here. (Filing No. 218, at pp. 19-20; Filing No. 232, at pp. 3-4).

rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Gumbhir v. Curators of the Univ. of Missouri*, 157 F.3d 1141, 1146 (8th Cir. 1998). "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee. Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley,* 461 U.S. at 437 (noting that the "applicant should exercise billing judgment with respect to hours worked") (internal quotation omitted); *see also Orduno v. Pietrzak*, 932 F.3d 710, 719-20 (8th Cir. 2019).

Once the court determines the lodestar amount, it may consider the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), in evaluating "the ultimate reasonableness of the award." *League of Women Voters of Missouri v. Ashcroft*, 5 F.4th 937, 941 (8th Cir. 2021) (*quoting In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018)). Those factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 941, n.3 (*quoting Hensley*, 461 U.S. at 430 n.3). After calculating the lodestar amount, a district court "may [then] consider other factors to 'adjust the fee upward or downward.'" *Marshall v. Anderson Excavating & Wrecking Co.,* 8 F.4th 700, 712 (8th Cir. 2021) (*quoting Smith v. AS Am., Inc.*, 829 F.3d 616, 623 (8th Cir. 2016)).

## III. ANALYSIS

### A. Scope of the Dispute

Before turning to the lodestar, the court must determine which fees remain in dispute. Teleton argues that Alorica's response did not comply with the sanctions order and

that the court should therefore award the full amount requested. Alternatively, Teleton argues that the court should review only the fees Alorica specifically challenged. (Filing No. 233, at pp. 4-6; Filing No. 243, at p. 2). The court will address each in turn.

1. *Sufficiency of Alorica's Objections*

The sanctions order required Alorica to make "specific objections to itemized tasks and the reasons supporting those objections." (Filing No. 218, at p. 23). Teleton argues that Alorica's annotated fee statement fell short of that requirement because it consisted of internal comments among Alorica's counsel and cited no authority. Teleton believes that the court should overrule Alorica's objections and award the full amount requested, or $179,526.20. (Filing No. 233, at p. 5).

The court disagrees. Alorica's response identified the specific entries it challenged and stated a reason for each--primarily, that the entries fell outside the five categories, duplicated other work, or reflected excessive time. (Filing No. 235-1, at pp. 40-95). The sanctions order required nothing more. It did not require Alorica to cite legal authority and the informal tone of the annotations does not change their substance. Indeed, Teleton itself evaluated the objections on their merits and conceded that it errantly included some entries. (Filing No. 233, at p. 5). Moreover, the sanctions order contemplated a fee request as undisputed only if Alorica failed to timely respond, not when the opposing party considered a timely response insufficiently specific. (Filing No. 218). Alorica's response therefore satisfied the sanctions order and the court declines to award the full amount on that basis.

2. *The Undisputed Fees*

Alorica did not, however, object to every entry. Alorica's counsel stated that the objections amounted to $70,720.00 in fees and its opposition brief did not change that figure or challenge any other entries. (Filing No. 233, at p. 4; Filing No. 241). The court will therefore accept that the remaining $105,480.00 in fees and $2,326.20 in costs lie within the five approved categories for recovery and will not review those entries individually. Even so, the court must still ensure that the total award is reasonable. That

obligation applies to the entire fee request, including counsel's hourly rates and the total time spent. *See Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (noting that the district court "bears the responsibility of scrutinizing attorney fee requests"); *see Hensley,* 461 U.S. at 433-34 ("It remains for the district court to determine what fee is 'reasonable'") (internal citation omitted). Teleton contends that the court already determined its fees were reasonable. (Filing No. 233, at pp. 2-3). But the sanctions order only identified the categories of compensable work where reasonable fees may be requested. (Filing No. 218, at p. 19). It did not assess the reasonableness of any particular amount, which of course the court must do now.

## B. Attorney Fees

Teleton seeks $176,200.00 in attorneys' fees for 447.90 hours of work by five attorneys and one paralegal. (Filing No. 235-1, at pp. 1-4, 37). Teleton's counsel billed the following rates and hours:

| Timekeeper | Position and Experience | Rate | Hours | Total |
|---|---|---|---|---|
| Marnie A. Jensen | Partner; 25 years | $550 | 82.5 | $45,375.00 |
| Alexa B. Barton | Senior associate; 7 years | $400 | 81.8 | $32,720.00 |
| Kevin Grossaint | Associate; 2 years | $350 | 230.2 | $80,570.00 |
| Zachary Matson | Associate; 1 year | $350 | 44.6 | $15,610.00 |
| Aubrey L. Wells | Associate; 3 years | $350 | 1.1 | $385.00 |
| A. Murphy | Paralegal; 20+ years | $200 | 7.7 | $1,540.00 |
| **Total** | | | **447.9** | **$176,200.00** |

(Filing No. 235-1, at pp. 2-4, 37). Teleton's counsel explained that given its client's non-profit status, the firm reduced significantly Jensen's standard rate of $1,025 per hour and

Barton's standard rate of $625 per hour. (Filing No. 235-1, at p. 4). The remaining timekeepers billed at their standard rates. (Filing No. 235-1, at p. 4).

1. *Determination of Lodestar Amount*

a. *Reasonable Hourly Rates*

The court begins with determining reasonable hourly rates for each counsel. "As a general rule, a reasonable hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'" *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002) (*quoting Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001)). Although Alorica did not challenge counsel's rates when it responded to Teleton's itemized fee statement, it raises that challenge here. (Filing No. 241, at pp. 8-9; Filing No. 243, at pp. 8-10; Filing No. 235-1, at p. 4). Because the sanctions order awarded only reasonable fees, the court of course must determine a reasonable rate for each timekeeper regardless of whether Alorica objected. (Filing No. 218, at p. 19). In doing so, "district courts may rely on their own experience and knowledge of prevailing market rates." *Hanig*, 415 F.3d at 825 (*citing Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2004)).

Judges of this court have recognized that billing rates for experienced litigators in Nebraska range on average from $250 to $350 per hour. *See BJ's Fleet Wash v. City of Omaha*, 2023 WL 2964432, at *5 (D. Neb. Mar. 8, 2023); *Benson v. City of Lincoln*, 774 F. Supp. 3d 1046, 1077 (D. Neb. 2024). Most recently, this court found $350 per hour reasonable for a shareholder with more than fifteen years of commercial litigation experience, explaining that $350 marks "the top of the range for experienced litigators absent some exceptional circumstance(s)." *Streblow v. Club 180*, No. 8:25CV241, 2026 WL 1724321, at *2 (D. Neb. June 15, 2026). In the same case, the court found $250 per hour was reasonable for a fourth-year associate, placing her at the lower end of the range. *Id*. The court has approved rates above that range only where counsel documented exceptional experience and circumstances. In *Benson*, for example, the court awarded $400

per hour to lead counsel whose experience exceeded that of attorneys previously awarded lower rates, while awarding $300 per hour to attorneys with some experience in employment cases. *Benson,* 774 F. Supp. 3d at 1077-79. And in a sanctions fee dispute much like this one, the court found reasonable rates of $290 to $310 per hour for attorneys with nearly twenty years of practice. *See Clayton Int'l, Inc. v. Neb. Armes Aviation, LLC*, No. 8:21CV309, 2025 WL 2466482, at *3 (D. Neb. Aug. 28, 2025).

Teleton offers three arguments for its requested rates. First, Teleton argues that the $250 to $350 range is stale because it derives from a dated 2019 decision. (Filing No. 243, at pp. 8-9) (*citing Rhone v. Union Pac. R.R. Co*., No. 8:18CV597, 2019 WL 4933499, at *2 n.1 (D. Neb. Oct. 7, 2019)). The range may have first appeared in *Rhone*, but similar limitations have certainly been imposed in more recent cases. In 2024, the court in *Benson* again reaffirmed, based on its own experience and knowledge of customary fees, that $350 sits at the top of the regional market, absent some exceptional circumstance. *Benson*, 774 F. Supp. 3d at 1077. The court applied the same range in 2025 and again in June 2026. *Clayton*, 2025 WL 2466482, at *3; *Streblow*, 2026 WL 1724321, at *2. Teleton relies on its lead counsel's declaration that the rates charged here are reasonable and customary, but offers no affidavits from other local practitioners or other evidence that market rates have changed significantly from those already accepted as reasonable by the court. (*See* Filing No. 235-1, at p. 4)

Second, Teleton argues that its attorneys billed at rates well below their standard rates. (Filing No. 243, at p. 9). That discount reflects Teleton's arrangement with its counsel, not the prevailing rate in this market. "Although a counsel's customary rate might be some evidence of a reasonable rate, it is not controlling." *Moysis*, 278 F.3d at 828; *see also Hanig*, 415 F.3d at 825 (affirming reduction to $200 per hour for an attorney who charged $250 per hour in other types of litigation).

Third, Teleton argues that reducing its counsel's rates would leave it short of being made whole for Alorica's misconduct. (Filing No. 243, at p. 10). The court disagrees. The rules underlying the sanctions order authorized the recovery of reasonable expenses caused

by Alorica's violations. *See* Fed. R. Civ. P. 26(g)(3), 37(c)(1)(A), 37(d)(3). An award calculated at reasonable rates makes Teleton whole in the sense those rules contemplate. It does not require Alorica to pay rates above the prevailing market.

The court will now address the particular rates here. Teleton's lead counsel Jensen graduated from law school in 2001, has practiced commercial litigation for twenty-five years, and has substantial experience in complex discovery disputes. (Filing No. 235-1, at p. 2; Filing No. 243, at p. 9). That experience places her at the top of the prevailing range and the court is comfortable drawing that conclusion based upon the attorney's training and experience. While Teleton contends that her experience justifies a rate beyond that range, the court must also look closely at the issues and type of work involved. *See, e.g. Benson*, 774 F.Supp.3d at 1078 (the court permitted a small premium above the top prevailing rate because of the "kind of work at issue," which involved extensive litigation in an employment discrimination matter). The sanctions permitted here arose from ongoing discovery dispute(s). Discovery matters in general fall within the ordinary and anticipated scope of work for commercial litigators. While the conduct here certainly exceeded typical discovery matters warranting sanctions, the central issues were not overly complex. The court therefore finds a rate of $350 per hour reasonable for Jensen.

Barton, a senior associate, graduated from law school in 2019 and has practiced commercial litigation for seven years. (Filing No. 235-1, at p. 2). Her experience exceeds that of the fourth-year associate the court placed at $250 per hour in *Streblow*. It falls well short, however, of the nearly twenty years of practice reflected in the $290 to $310 rates approved in *Clayton*, and of course now the $350 rate approved for Jensen with twenty-five years of experience. *See Streblow*, 2026 WL 1724321, at *2; *Clayton*, 2025 WL 2466482, at *3. The court therefore finds a rate of $275 per hour reasonable for Barton's work, especially considering again the nature of the discovery dispute(s) at issue.

The associates' rates warrant greater adjustment. Wells, Grossaint, and Matson graduated from law school in 2023, 2024, and 2025, respectively, and each has between one and three years of practice. (Filing No. 235-1, at pp. 2-3). Teleton nonetheless billed

their time at $350 per hour, the top of the regional range for experienced litigators. Teleton justifies that rate only by reference to the complexity and duration of the discovery disputes. (Filing No. 243, at pp. 9-10). Complexity may justify the hours spent, but it does not convert junior associates into experienced litigators. Each associate has less experience than the fourth-year associate in *Streblow*, and their rate should reflect that difference. *See Streblow*, 2026 WL 1724321, at *2; *Hanig*, 415 F.3d at 825 (affirming $125 per hour for an attorney with two years in private practice while approving $200 per hour for a more experienced colleague). The court finds a rate of $200 per hour reasonable for each associate.

Finally, Murphy has worked as a litigation paralegal for more than twenty years. (Filing No. 235-1, at p. 3). Although Alorica does not separately challenge her rate, the court must determine a reasonable rate for each timekeeper. This court has found $100 per hour reasonable for law clerks, legal assistants, and paralegals. *Benson*, 774 F. Supp. 3d at 1079-80; *see also Streblow*, 2026 WL 1724321, at *3. Recognizing Murphy's extensive experience, the court finds a rate of $125 per hour reasonable for her work.

At these rates, Teleton's revised fees total $107,512.50:

| **Timekeeper** | **Reasonable Rate** | **Hours** | **Total** |
|---|---|---|---|
| Jensen | $350 | 82.5 | $28,875.00 |
| Barton | $275 | 81.8 | $22,495.00 |
| Grossaint | $200 | 230.2 | $46,040.00 |
| Matson | $200 | 44.6 | $8,920.00 |
| Wells | $200 | 1.1 | $220.00 |
| Murphy | $125 | 7.7 | $962.50 |
| **New Total** | | **447.9** | **$107,512.50** |

b. *Hours Reasonably Expended*

In determining the appropriate lodestar, the court must next determine whether counsel reasonably expended the hours claimed. The court "should exclude from this initial fee calculation hours that were not 'reasonably expended,'" including hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. In making that determination, courts "should weigh the hours claimed against [their] own knowledge, experience, and expertise of the time required to complete similar activities." *Paris Sch. Dist. v. Harter*, 894 F.3d 885, 889 (8th Cir. 2018) (quoting *Gilbert v. City of Little Rock*, 867 F.2d 1063, 1066 (8th Cir. 1989)). The court need not accept counsel's submission as conclusive. *See Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573, 575 (8th Cir. 2014). The question "is not whether hindsight vindicates an attorney's time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Tabech v. Gunter*, 869 F. Supp. 1446, 1456 (D. Neb. 1994) (citations omitted). Throughout, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

There is also "no precise rule or formula" for adjusting a fee award, and the court "necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436-37; *see also Beckler v. Rent Recovery Sols., LLC*, 83 F.4th 693, 695 (8th Cir. 2023) (according "substantial deference" to a district court's determination that fees were excessive) (quoting *Fox*, 563 U.S. at 838). A percentage reduction may be more appropriate than a line-by-line review, particularly when the excess time is spread throughout the billing records rather than confined to discrete entries. *See Fox*, 563 U.S. at 838 (explaining that courts "need not, and indeed should not, become green-eyeshade accountants" and "may use estimates in calculating and allocating an attorney's time"); *Hensley*, 461 U.S. at 438 n.13 (approving a thirty percent reduction in one attorney's hours); *Beckler*, 83 F.4th at 695 ("We have ordered or approved flat percentage reductions in appropriate cases."); *Kline v. City of Kan. City, Mo., Fire Dep't*, 245 F.3d 707, 709 (8th Cir. 2001) (affirming fee award that included a 15% reduction for

"overlawyering"). Such reductions are properly made as part of the lodestar calculation. *See Tabech*, 869 F. Supp. at 1456.

Alorica challenges only some of the requested entries. The court has reviewed each and is familiar with this litigation and the efforts required to address Alorica's discovery deficiencies. Many of the disputed entries reflect reasonable time spent on the discovery conferences, the ESI Protocol, and the West Interactive subpoena. That work arose directly from the sanctionable conduct. The court cannot, however, ignore the substantial time counsel spent on the two sanctions motions.

In particular, counsel billed approximately 124 hours preparing the first sanctions motion and supporting materials and another 37 hours on the reply brief. (Filing No. 235-1, at pp. 18-32). Counsel billed approximately 59 hours preparing the second sanctions motion and another 34 hours on a reply. (Filing No. 235-1, at pp. 32-37). In total, the work on those motions accounts for more than half of the hours Teleton seeks. The court recognizes the scope of that work. The first motion addressed more than a year of discovery conduct through a 41-page brief and 25 exhibits. (Filing No. 138; Filing No. 139). The second required counsel to parse a 379-page deposition transcript across eleven deficient topics. (Filing No. 186; Filing No. 243, at pp. 7-8). As in *Clayton*, however, the issues may have been fact intensive, but they again were not unusually complex. *See Clayton*, 2025 WL 2466482, at *3. In *Clayton*, the court found that approximately 154 hours spent on a single sanctions motion and its reply warranted a reduction. *Id.* at *3-4. Here, counsel spent approximately 254 hours on two. *See Beckler*, 83 F.4th at 695 (rejecting challenge to district court's comparison of hours expended to those approved in similar cases).

Nor is the excess confined to the sanctions motions or to the entries Alorica challenged. The time spent on the sanctions motions spanned both disputed and undisputed entries. The record also reflects some overstaffing, including multiple attorneys attending the same meet-and-confer calls under a staffing model the firm adopted for its own continuity. (Filing No. 235-1, at pp. 2, 9-10, 20); *see Hensley*, 461 U.S. at 434 ("Cases may be overstaffed, and the skill and experience of lawyers vary widely."). Much of that excess

falls within entries Alorica did not challenge, which the court has accepted without individual review. It appears also that any overstaffing may reflect the firm's staffing model rather than discrete billing errors.

For these reasons, the court finds that a line-by-line reduction is neither practical nor precise. The court accordingly will exercise its discretion and apply a ten percent reduction to Teleton's fees as a whole, consistent with the reductions applied in *Clayton* and *Tabech*. *See* *Clayton*, 2025 WL 2466482, at *4; *Tabech*, 869 F. Supp. at 1460 (applying ten percent "across-the-board" reduction where the records made it difficult to determine whether some work was necessary or whether multiple counsel duplicated one another's work). Reducing Teleton's total fees of $107,512.50 by ten percent, or $10,751.25, yields a lodestar amount of $96,761.25.

2. *Adjustments to Lodestar Amount*

After determining the lodestar amount, the court must consider whether the amount should be further reduced or modified. "[A] reduction in attorney's fees may be appropriate when recordkeeping is poor or block billing is submitted." *Ryan Data Exch., Ltd. v. Graco, Inc*., 913 F.3d 726, 736 (8th Cir. 2019). The court may also "reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used." *L.B. ex rel. A.J. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995). Alorica challenges some of the entries as unrelated to the five categories, duplicative, or excessive. (Filing No. 235-1, at pp. 41-95).

a. *Duplicative Entries*

Alorica argues that multiple attorneys billed for the same work. The court may reduce fees for duplication. *See* *Kierst*, 56 F.3d at 864. But the use of more than one attorney is "both desirable and common," and a court may not reduce fees "solely on the basis that multiple attorneys helped to secure a prevailing party's success." *Id*. at 863-64. "[T]ime spent by two attorneys on the same general task is not … per se duplicative," because "[c]areful preparation often requires collaboration and rehearsal." *Rodriguez-*

*Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir. 1998). This court has declined to treat billing by two attorneys at the same depositions and meetings as duplicative. *See ACLU Neb. Found. v. City of Plattsmouth*, 199 F. Supp. 2d 964, 969 (D. Neb. 2002). And the opposing party's own use of multiple counsel supports the reasonableness of the other side's staffing. *See Carhart v. Stenberg*, 11 F. Supp. 2d 1134, 1137-38 (D. Neb. 1998) (finding plaintiff's use of five attorneys reasonable where four attorneys appeared for defendants at a hearing).

Much of the collaboration Alorica challenges falls within these principles. Alorica itself appeared through two attorneys at each of the first two discovery conferences and through five attorneys at the third. (Filing Nos. 90, 107, 117). Two Teleton attorneys attended Nissen's day-long Rule 30(b)(6) deposition, which the court finds was not duplicative. (Filing No. 235-1, at pp. 30-31). And Teleton assigned the majority of its hours to junior associates billing at lower rates. As noted above, the record does reflect some overstaffing, including occasions when three Teleton attorneys attended the same meet-and-confer call. (Filing No. 235-1, at pp. 2, 9-10, 20). The ten percent reduction applied in calculating the lodestar accounts for that overlap and no further reduction for duplication is warranted.

*b. Timing of Entries*

Beyond who performed the work, Alorica questions when it began. Alorica argues that Teleton "has been setting this up for a sanctions motion since March 2025" and that Teleton's counsel began billing for the first sanctions motion that month. (Filing No. 235-1, at p. 80; Filing No. 241, at pp. 7, 10). Teleton's billing entries do begin in March 2025. (Filing No. 235-1, at p. 9). But those early entries do not reflect work on a sanctions motion. They instead reflect meet-and-confer efforts concerning Alorica's deficient discovery responses, the same deficiencies that led to the first discovery dispute conference on June 12, 2025. (Filing No. 235-1, at pp. 9-10; Filing No. 90). The sanctions order's first category expressly covers "[p]reparing for and participating in" that conference, "including pre-conference submissions and meet-and-confer efforts." (Filing No. 218, at p. 19). The

timing of the work does not take it outside that category. *See Clayton*, 2025 WL 2466482, at *7 (finding that entries predating the first discovery conference fell within an order authorizing fees for "[p]reparing for and participating in" that conference). Teleton's billing does not reflect work on the first sanctions motion until August 14, 2025, the day of the third discovery conference. (Filing No. 235-1, at p. 18). By then, the court had held three conferences addressing Alorica's discovery deficiencies. And the sanctions order authorized fees for "preparing and filing both Motions for Sanctions" without limiting when that preparation could begin. (Filing No. 218, at p. 19). The court therefore finds that these entries fall within the sanctions order.

c. *Adherence to the Sanctions Order*

Alorica also contends that certain entries fall outside the five categories the sanctions order authorized. (Filing No. 235-1, at pp. 43-59; Filing No. 218, at p. 19). Teleton concedes that two of its entries likely do: Jensen's March 11, 2025 entry for revising discovery requests and her June 10, 2025 entry for revising expert disclosures and addressing a non-party subpoena. (Filing No. 233, at p. 5 n.2; Filing No. 235-1, at pp. 9, 12). Teleton argues that its proposed ten percent reduction of the disputed fees accounts for them. But a percentage reduction addresses excessive time on compensable work, not work the sanctions order did not authorize. The court will therefore exclude both entries.

Alorica also objects to a third entry as unrelated to the sanctions order, but Teleton disagrees. (Filing No. 235-1, at p. 59; Filing No. 233, at p. 5 n.2). In that entry, dated August 14, 2025, Jensen billed 2.8 hours to "[a]ssess contractual defenses and relevant case-specific facts raised by opposing counsel, and prepare summary of outstanding discovery disputes, deficiencies, and key issues for upcoming discovery hearing." (Filing No. 235-1, at p. 18). The entry described two separate tasks. Preparing a summary of discovery disputes for the third conference fell within the sanctions order, but assessing Alorica's contractual defenses did not. Jensen recorded both tasks under a single block of time, so the court cannot tell how much of the 2.8 hours went to the compensable task. *See* NECivR 54.3(b) (prohibiting block billing); *Clayton*, 2025 WL 2466482, at *8 (excluding

block-billed entries that combined authorized and unauthorized work because the court could not "decipher which time [was] allotted for which task"). The court will therefore exclude the entry.

In total, the three excluded entries amount to $2,170.00 at the reasonable rates set above. Because the lodestar already reflects a ten percent reduction of those entries, the court subtracts the remaining $1,953.00 ($2,170.00 less 10%) from the lodestar of $96,761.25, resulting in recoverable fees of $94,808.25.

3. *The Johnson Factors*

After calculating the lodestar, district courts generally evaluate "the ultimate reasonableness of the award…by considering relevant factors from the twelve factors listed" in Johnson. *League of Women Voters*, 5 F.4th at 941 (*quoting In re Target Corp.*, 892 F.3d at 977). Many of those factors, however, are reflected already in the lodestar, including "the novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). The court need not address every factor. *Baker v. John Morrell & Co*., 263 F. Supp. 2d 1161, 1190 (N.D. Iowa 2003).

Alorica asks the court to reduce the fee further under the *Johnson* factors. But Alorica identifies no factor beyond the rate and hours arguments the court has already addressed. (Filing No. 241, at p. 11). Several factors favor Teleton. Experienced counsel handled a prolonged discovery dispute spanning more than a year and requiring significant time and labor. And although the court granted both sanctions motions only in part, Teleton obtained findings that Alorica violated four discovery rules, and the sanctions order awarded fees for preparing both motions. (Filing No. 218, at pp. 18-20). Having already adjusted counsel's rates to the prevailing market and reduced the fees by ten percent, the court finds that no further reduction is necessary.

### C. Costs and Expenses

In addition to attorneys' fees, Teleton seeks $2,326.20 in court reporter costs for the Rule 30(b)(6) deposition of Brenda Nissen. (Filing No. 233, at p. 4). Alorica does not object to the requested costs. (Filing No. 233, at p. 4; Filing No. 235-1, at p. 3). Under NECivR 54.4(b)(2), a party seeking deposition costs should identify the court reporter, the date of the deposition, the deponent, and the purpose and use of the deposition. The rule operates as a guideline, however, and does not demand strict compliance. *See Tabech*, 869 F. Supp. at 1463 (explaining that the fee application guidelines are "not…intended to be a straight jacket"). Teleton's supporting invoice identifies the court reporter, the deponent, and the date of the deposition. (Filing No. 235-1, at p. 39). Because the sanctions order expressly authorized recovery of costs incurred in preparing for and conducting Nissen's deposition, the court awards Teleton $2,326.20 in costs. (Filing No. 218, at p. 19).

## IV. CONCLUSION

For the foregoing reasons, the court finds that an award of $94,808.25 in attorneys' fees and $2,326.20 in costs, for a total of $97,134.45 to Teleton to be reasonable. The sanctions order also provided that the court may award Teleton up to an additional $1,000.00 for the cost of preparing a motion for assessment of fees, should one become necessary. (Filing No. 218, at p. 23). Alorica's objections made this motion necessary, and the court therefore awards Teleton that additional amount.

Accordingly, IT IS ORDERED:

1. Plaintiff's Motion for Assessment of Attorney Fees and Costs to be Awarded is granted in part. (Filing No. 233). Plaintiff is awarded attorneys' fees of $94,808.25 and costs of $2,326.20, for a total of $97,134.45 against Defendant Alorica, Inc.
2. Plaintiff is awarded an additional $1,000.00 for preparing the instant motion, making Plaintiff's total award against Alorica, Inc. $98,134.45.

Dated this 15th day of October, 2026.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge